## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, DISTRICT 2-13 and COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, LOCAL 13000, | : : : : : | CIVIL ACTION |
| Petitioners, | : : | |
| v. | : : | No. 17-1869 |
| VERIZON PENNSYLVANIA, LLC (formerly known as VERIZON PENNSYLVANIA, INC.), | : : : : | |
| Respondent. | : : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                      **AUGUST 15, 2017**

Presently before the Court is Petitioners Communications Workers of America, AFL-CIO, District 2-13 and Communications Workers of America, AFL-CIO, Local 13000's (collectively, "the Union") Petition to Compel Verizon to Arbitrate. Also before the Court are Respondent Verizon Pennsylvania, LLC's ("Verizon") Motion for Judgment on the Pleadings, the Union's Response in Opposition to Verizon's Motion for Judgment on the Pleadings, and Verizon's Reply to the Union's Response.[1] For the reasons noted below, the Union's Petition to Compel Verizon to Arbitrate is granted, and Verizon's Motion for Judgment on the Pleadings is denied.

---

[1] The Union initiated this action by filing the Petition to Compel Verizon to Arbitrate. Although it seeks an order in its Petition to Compel Verizon to Arbitrate, it does not file any motion to move the Court for such an order. For purposes of simplicity, we will treat the Union's Petition and Verizon's Motion for Judgment on the Pleadings as cross motions for judgment on the pleadings, but will retain their original names when referencing them throughout this Opinion.

# I.  BACKGROUND

The "Verizon Sickness and Accident Disability Benefit Plan for Mid-Atlantic Associates" ("SADBP") provides disability benefits to eligible employees in the event they suffer a physical disability to work on account of sickness or an accident.  (Pet.; Ex. 2 ("SADBP") § 1.)  The SADBP incorporates the "Disability Benefits Summary Plan Description for Mid-Atlantic Associates" ("SPD"), which provides that benefits coverage ends when an employee's employment is terminated (including retirement) or when an employee has received the maximum amount of benefits under the plan.  (Pet.; Ex. 3 ("SPD") at 5.)  However, if employment terminates while the employee is receiving benefits, the benefits will continue until the employee is no longer certified as "disabled" or the maximum amount of benefits is reached, whichever occurs first.  (Id.)

The Union and Verizon are parties to a collective bargaining agreement ("CBA") that had an effective term of September 19, 2012 through August 1, 2015.  (Pet. ¶ 9.)  The CBA contains a number of provisions pertaining to grievance procedure and dispute resolution.  Article 10 states that if a controversy between the parties is not satisfactorily settled, either the Union or Verizon may submit the question under dispute to arbitration in accordance with Article 13 of the CBA.  (Pet.; Ex. 1 ("CBA") § 10.06.)  In turn, Article 13 provides that "[t]here shall be arbitrated only the matters specifically made subject to arbitration by the provisions of this Agreement."  (Id. § 13.01.)  Article 16 is titled "Pensions and Benefits," and provides as follows:

>16.01  During the life of this Agreement the Company will not:
>
>>16.011 Make any change in the "Verizon Pension Plan" or the "Verizon Sickness and Accident Disability Benefit Plan" which would reduce or diminish the benefits or privileges provided by the Plans for employees within the bargaining unit without the agreement of the Union.
>
>* * *

> 16.02  A claim that this Article has been violated may be submitted to arbitration under Article 10.  A claim of an employee within the bargaining unit that they have been deprived of any benefits or privileges to which they are entitled under the Plans may be processed as a grievance under the provisions of Article 10, but shall not be subject to arbitration.  However, nothing in this Agreement shall be construed to subject the provisions of the Plans or their administration or the terms of a proposed change to arbitration.

(Id. art. 16.)

In February 2015, the Union claims it learned Verizon was discontinuing providing certain benefits, such as healthcare and life insurance benefits, to bargaining-unit members who were terminated from Verizon and were receiving accident disability benefits.  (Pet. ¶ 19.)  The Unions contends that those individuals were still certified as disabled and had not received the maximum disability amount available under the SADBP.  (Id. ¶ 20.)  On February 6, 2015, the Union sent Verizon a letter stating that Verizon was required to provide those individuals with benefits pursuant to the CBA, Memorandum of Understanding ("MOU"), and the SADBP.  (Id. ¶ 21; see also Pet.; Ex. 5.)  On March 24, 2015, the Union filed a written grievance that charged "a violation of Articles 2, the 2012 MOU and any related articles and letters of the [CBA] that apply."  (Pet.; Ex. 7; see also Pet. ¶ 23.)  The Union and Verizon then held two days of meetings regarding the grievance, but they were unable to resolve it.  (Pet. ¶ 24.)  On May 28, 2015, the Union emailed Verizon to confirm the grievance could not be resolved, reiterating the language in the March 14, 2015 written grievance and adding, "The Union's position is that [Verizon] made changes to the [SADBP] that reduces and diminishes the benefits and privileges provided by the plan for bargaining unit employees without the agreement of the Union."  (Pet.; Ex. 8 ("May 28, 2015 Email"); see also Pet. ¶ 24.)

On June 3, 2015, the Union submitted to Verizon a written demand for arbitration of the grievance.  (Pet.; Ex. 9; <u>see also</u> Pet. ¶ 25.)  Verizon responded that it would not agree to arbitrate the grievance because the grievance was not substantively arbitrable and was untimely.[2]  (Pet.; Ex. 10; Pet. ¶ 27.)  In an email dated November 2, 2016, Verizon stated that the Union's grievance was not arbitrable under the second sentence of § 16.02 of the CBA because it was a claim for benefits.  (Pet.; Ex. 10; Pet. ¶ 27.)  On January 5, 2017, the Union responded by stating that the dispute concerned a violation of § 16.011 and was arbitrable under the first sentence of § 16.02. (Pet.; Ex. 11; Pet. ¶ 31.)

On April 24, 2017, the Union filed a Petition to Compel Verizon to Arbitrate pursuant to 9 U.S.C. § 4 and 29 U.S.C. § 185(a).  In its Petition, the Union seeks a court order compelling Verizon to arbitrate the March 24, 2015 grievance and an award of costs and reasonable attorneys' fees for pursuing the action.  On June 23, 2017, Verizon filed an Answer to the Petition and a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## II.  <u>LEGAL STANDARD</u>

### A.  Legal Standard for Determining Labor Arbitrability

There is a strong federal policy in resolving labor disputes through arbitration.  <u>See</u> <u>Rite Aid of Pa., Inc. v. United Food and Commercial Workers Union, Local 1776</u>, 595 F.3d 128, 131 (3d Cir. 2010) (citing <u>United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, Local Union No. 430</u>, 55 F.3d 138, 141 (3d Cir.1995); <u>Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.</u>, 26 F.3d 375, 399 (3d Cir. 1994); <u>Exxon Shipping Co. v. Exxon Seamen's Union</u>, 11 F.3d 1189, 1196 (3d Cir. 1993)).  Notwithstanding that strong federal policy, traditional contract principles apply to collective bargaining agreements and their arbitration clauses, and a court cannot order arbitration

---

[2] Verizon makes no argument concerning timeliness in its submissions to the Court.

outside the scope of the arbitration clause.  See United Steelworkers of Am. AFL-CIO-CLC v. Rohn & Haas Co., 522 F.3d 324, 332 (3d Cir. 2008).

The determination of whether a particular grievance is arbitrable is governed by the principles set forth in the United States Supreme Court's ("Supreme Court") line of cases collectively known as the "Steelworkers Trilogy."  See Rite Aid of Pa., 595 F.3d at 138 (citing United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593 (1960)).  First, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Id. at 139 (quoting Warrior & Gulf, 363 U.S. at 582) (internal quotation marks and alterations omitted).  Second, "[u]nless the parties 'clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'"  Id. (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).  Third, the court is not to rule on the potential merits of a particular claim in deciding whether the parties have agreed to arbitrate the grievance.  Id. (quoting AT & T Techs., 475 U.S. at 648).  Finally, there is a presumption of arbitrability when a CBA contains an arbitration clause, and it is especially applicable when the arbitration clause is broad.  Id. (citing AT & T Techs., 475 U.S. at 650).

The United States Court of Appeals for the Third Circuit ("Third Circuit") set forth a three-step framework for determining arbitrability: (1) whether the present dispute comes within the scope of the arbitration clause; (2) whether another provision of the contract excludes the particular dispute from arbitration; and (3) whether there is "forceful evidence" that the parties intended such an exclusion.  See D.A. Nolt, Inc. v. Local Union No. 30, 143 F. Supp. 3d 229, 236 n.5 (E.D. Pa. 2015) (quoting E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters,

Chauffeurs, Warehousemen & Helpers of Am., 812 F.2d 91, 95 (3d Cir. 1987)). In making that determination, "the court is limited to the construction of the arbitration clause and any contractual provisions relevant to its scope, as well as any other 'forceful evidence' suggesting that the parties intended to exclude the disputes at issue from arbitration." Rite Aid of Pa., 595 F.3d at 131-32 (quoting E.M. Diagnostic, 812 F.2d at 95).

### B. Rule 12(c) Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court may grant a motion for judgment on the pleadings "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008) (citation omitted). "We 'view[] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.'" D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 271 (3d Cir. 2014) (quoting Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)). "A Rule 12(c) motion 'should not be granted unless the moving party has established that there is no material issue of fact to resolve, and [the moving party] is entitled to judgment as a matter of law.'" Id. (quoting Mele, 359 F.3d at 253). "Ordinarily, in deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (footnotes omitted).

### III. DISCUSSION

### A. Whether the Arbitration Clause is Broad or Narrow

As an initial matter, we will first determine whether the arbitration clause is broad or narrow. While the Supreme Court has held that there is a presumption of arbitrability when a

CBA contains an arbitration clause, see AT & T Techs., 475 U.S. at 643 (citing Warrior & Gulf, 363 U.S. at 582-583), the Third Circuit has clarified that the presumption does not apply in all circumstances, creating a distinction between broad and narrow clauses, see Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc., 458 F.3d 305, 310 (3d Cir. 2006) (hereinafter "Verizon") (citing Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 n.5 (3d Cir. 1992)). Arbitration clauses that are broad receive a presumption of arbitrability, whereas those that are narrow do not receive a presumption. Id.

In AT & T Techs., the Supreme Court characterized an arbitration clause as "broad" that provided arbitration for "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder." AT & T Techs., 475 U.S. at 650 (internal quotation marks omitted). Likewise, the Third Circuit has held that arbitration clauses pertaining to "any dispute" or "any differences" in a CBA are broad and that no presumption of arbitrability is applicable. See Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO), 989 F.2d 668, 673 (3d Cir. 1993) (stating that the clause providing arbitration for "any differences aris[ing] between the Company and the Union" was broad); E.M. Diagnostic, 812 F.2d at 95 (stating that the arbitration clause language of "any dispute arising out of a claimed violation of this Agreement" was broad). In contrast, the Third Circuit has held that an arbitration clause is narrow when it limits the matters subject to arbitration. See Trap Rock, 982 F.2d at 888 n.5. For example, in Verizon, the arbitration clause provided that "only the matters specifically made subject to arbitration . . . shall be arbitrated." Verizon, 458 F.3d at 311. The court held that the clause was narrow because, unlike the clauses in E.M. Diagnostic and Lukens, it foreclosed "the possibility that other issues could be arbitrated by providing that the list [was] exclusive." Id. Therefore, the clause was narrow and the presumption of arbitrability did not apply. Id.

The Union and Verizon's CBA contains an arbitration clause that provides that "[t]here shall be arbitrated only the matters specifically made subject to arbitration by the provisions of this Agreement." (CBA § 13.01.) The language is nearly identical to the arbitration clause in Verizon, in which the Third Circuit held that the clause was narrow. The only difference between this matter and the language in Verizon is that in Verizon, the arbitration clause then enumerated five specific issues that were subject to arbitration. See Verizon, 458 F.3d at 311. In this CBA, arbitration must be specified for a given subject matter in order for it to be arbitrable. Verizon's arbitration clause is unlike the clauses in AT & T, E.M. Diagnostic, and Lukens because it does not apply to "any" or "all" disputes. Rather, it clearly limits the matters that can be arbitrated. Accordingly, we find that Verizon's arbitration clause is narrow, and there is no presumption of arbitrability over the Union's grievance.

### B. Scope, Exclusions, and Other "Forceful Evidence"

We will next determine whether the Union's March 24, 2015 grievance is within the scope of the arbitration clause, whether the grievance is excluded from the clause, and whether there is other "forceful evidence" that the parties intended that this type of grievance be excluded from arbitration. See E.M. Diagnostic, 812 F.2d at 95. The arbitration clause provides that "[t]here shall be arbitrated only the matters specifically made subject to arbitration by the provisions of this Agreement." (CBA § 13.01.) Therefore, if the subject matter of the grievance is not specifically mentioned to be arbitrable, it is outside the scope of arbitrable matter. To review, the Union's grievance is that Verizon violated the 2012 MOU, as well as "Articles 2, 16, and all other Articles and Letters of the CBA that apply. The Union's position is that [Verizon] made changes to the [SADBP] that reduces and diminishes the benefits and privileges provided by the plan for bargaining unit employees without the agreement of the Union." (May 28, 2015 Email; Pet. ¶ 24.)

Article 16 of the CBA pertains to "Pensions and Benefits" and provides as follows:

16.01   During the life of this Agreement the Company will not:

> 16.011 Make any change in the "Verizon Pension Plan" or the "Verizon Sickness and Accident Disability Benefit Plan" which would reduce or diminish the benefits or privileges provided by the Plans for employees within the bargaining unit without the agreement of the Union.

\* \* \*

> 16.02   A claim that this Article has been violated may be submitted to arbitration under Article 10.   A claim of an employee within the bargaining unit that they have been deprived of any benefits or privileges to which they are entitled under the Plans may be processed as a grievance under the provisions of Article 10, but shall not be subject to arbitration.   However, nothing in this Agreement shall be construed to subject the provisions of the Plans or their administration or the terms of a proposed change to arbitration.

(CBA art. 16.)  At issue between the Union and Verizon is § 16.02 of the CBA.  Verizon claims the Union's grievance is excluded from arbitration under the second and third sentences of § 16.02 because the grievance is merely a claim for benefits, which would require plan interpretation. (Resp.'s Mem. Support Mot. for J. on the Pleadings at 2.)  Thus, Verizon argues that the remedy for former Verizon employees who claim to be denied benefits is the claims and appeals procedure outlined in SADBP § 9.1.  (Id. at 13.)  In contrast, the Union contends that its grievance is arbitrable under the first sentence of § 16.02.  (Pet.'s Mem. Support of Pet. to Compel Verizon to Arbitrate at 8.)  The Union further takes issue with Verizon's construction and interpretation of § 16.02, claiming that Verizon's interpretation fails to take in account the distinction between claims being made by the Union on behalf of its members, and claims by individual members that they have been denied benefits.  (Pet.'s Mem. in Response to Verizon's Mot. for J. on the Pleadings at 6-7.)  We agree with the Union.

In determining the scope of the arbitration clause, we must look to whether "'the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement' and one that the parties have agreed to arbitrate." Rite Aid of Pa., 595 F.3d at 132 (quoting E.M. Diagnostic, 812 F.2d at 95). Here, we have no difficulty in finding that the Union's grievance is within the scope of the arbitration clause. Article 13 states that only those matters specified within the CBA are subject to arbitration. See CBA § 13.01. In turn, the very first sentence of § 16.02 provides that "[a] *claim* that [Article 16] has been violated may be submitted to arbitration under Article 10." Id. § 16.02 (emphasis added). The Union has clearly made the requisite claim of a violation of Article 16. In its May 28, 2015 email after the grievance had not been settled, the Union specifically stated that its "position is that [Verizon] made changes to the [SADBP] that reduce[d] and diminishe[d] the benefits and privileges provided by the plan for bargaining unit employees without the agreement of the Union." (May 28, 2015 Email; Pet. ¶ 24.) The Union has specifically made a *claim* of a violation of § 16.011 of the CBA, the subject matter of which the first sentence of § 16.02 explicitly makes arbitrable. See CBA § 16.02. Accordingly, the Union's grievance is within the scope of the arbitration clause.[3]

Verizon contends that the Union's grievance is excluded from arbitration under the second and third sentences of § 16.02 because the Union challenges benefits eligibility, which requires plan interpretation and is not subject to arbitration. (Resp.'s Mem. Support Mot. for J. on the Pleadings at 13.) We believe that Verizon's interpretation of the CBA would essentially render

---

[3] Verizon makes the argument that the Union fails to allege any change to the actual terms of the SADBP that would reduce or diminish benefits. (Resp.'s Mem. Support Mot. for J. on the Pleadings at 12-13.) Thus, Verizon claims that a lack of actual change to the terms of the SADBP means that the Union is simply challenging benefits eligibility for former employees, which requires plan interpretation and is not arbitrable. (Id.) However, Verizon fails to take into account that whether the actual terms of the SADBP have changed is not for this Court to determine, as we have no authority to rule on the potential merits of the Union's grievance. See Rohn & Haas, 522 F.3d at 139 (quoting AT & T Techs., 475 U.S. at 648). The first sentence of § 16.02 of the CBA provides that any claim of a violation of Article 16 is arbitrable. See CBA § 16.02. Whether the Union ultimately prevails is not for our determination. The Union has made a claim of a violation of § 16.011, which the parties specifically allowed to be arbitrable under the clear and unambiguous language in the first sentence of § 16.02.

the first sentence of § 16.02 meaningless, as any claimed reduction in benefits necessarily impacts

an individual bargaining unit member.  Here, we agree with the Union that § 16.02 makes a

distinction between claims brought by the Union on a unit-wide basis, and claims by an individual

that he or she has been denied benefits.  The latter is not arbitrable because the second sentence of

§ 16.02 expressly carves it out of arbitration, stating that "[a] *claim of an employee* within the

bargaining unit that they have been deprived of any benefits or privileges to which they are

entitled under the Plans . . . shall not be subject to arbitration."  (CBA § 16.02) (emphasis added).

The second sentence of § 16.02 specifically states that a claim of an employee that he or she has

been denied benefits is not subject to arbitration.  Contrary to Verizon's interpretation, however, it

does not necessarily follow that a claim by the Union on behalf of its bargaining members that

there has been a reduction or diminishment in benefits is excluded from arbitration.  If that were

the case, then any claimed reduction in benefits would be excluded from arbitration and the second

sentence of § 16.02 would swallow the first.  In this case, we have a labor union that has made a

claim of a violation of § 16.011 on behalf of all of its members.  No other provision in the CBA or

Article 16 forecloses that type of subject matter from arbitration.[4]  Accordingly, the Union's

grievance is not excluded from the scope of the arbitration clause.[5]

---

[4] Verizon also argues that the third sentence of § 16.02 makes the Union's grievance non-arbitrable.  The third sentence of § 16.02 is peculiar, as it provides that "nothing in this Agreement shall be construed to subject the provisions of the Plans or their administration or the terms of a proposed change to arbitration."  (CBA § 16.02.)  The United States Court of Appeals for the District of Columbia ("D.C. Circuit") confronted nearly identical language in a CBA in Commc'ns Workers of Am. v. Am. Tel. & Tel. Co., 40 F.3d 426 (D.C. Cir. 1994).  In that case, Article 19.30 of the CBA prohibited any "change" in a benefit plan "which would reduce or diminish the benefits of employees represented by [the Union] without the Union's consent."  Id. at 434.  Article 19.40 provided that  "any dispute involving the true intent and meaning of Article 13 may be presented as a grievance and . . . submitted to . . . arbitration," but that "nothing herein shall be construed to subject the . . . Plans (or their successors) or their administration or the terms of the proposed change(s) in the Plan(s) to arbitration."  Id. at 429-30 (internal quotation marks omitted).  The district court and the appellees relied on the "nothing herein" portion of Article 19.40 in reliance on excusing the particular grievance from arbitration.  Id. at 435.  The D.C. Circuit reversed, stating that the district court and the appellees' "reading of the second sentence of Article 19.40 would render the first sentence of Article 19.40 a nullity."  Id.  Indeed, "the first sentence of Article 19.40 specifically subjects Article 19.30 disputes, which necessarily involve whether or not the Plan has been changed without CWA's consent, to final and binding grievance and arbitration procedures established by the CBA.  It would therefore be absurd to interpret the second sentence of Article 19.40 as exempting those exact disputes from mandatory arbitration."  Id.

Finally, Verizon makes the exact arguments that there is other "forceful evidence" that the parties intended the Union's grievance to be excluded from arbitration as it made in its primary arguments for exclusion. As noted, we reject Verizon's arguments in their entirety. Accordingly, there is no forceful evidence that the Union and Verizon intended to exclude this particular grievance from arbitration.

### C. Costs and Attorneys' Fees

The Union also seeks in its Petition to Compel Verizon to Arbitrate an award of costs and attorneys' fees incurred in pursuing the action. (See Pet. at 8; Pet.'s Mem. Support of Pet. to Compel Verizon to Arbitrate at 11-12.) "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail." Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co., 625 F.2d 1092, 1094 (3d Cir. 1980) (internal citations omitted). The award or denial of attorneys' fees is within the sound discretion of a court. See Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Local 112, 687 F.2d 673, 683 (3d Cir. 1982).

The Union argues that Verizon's refusal to arbitrate was not justified and that Verizon had no reasonable chance to prevail in this matter. (See Pet.'s Mem. Support of Pet. to Compel Verizon to Arbitrate at 12.) We disagree. While we ultimately reject Verizon's arguments

---

The CBA provisions in Commc'ns Workers of Am. are nearly identical to those in the matter *sub judice*. Here, § 16.011 prohibits a unilateral change of the terms of the Verizon Pension Plan and the SADBP that would reduce or diminish benefits. (See CBA § 16.011.) The first sentence of § 16.02 expressly allows a claim of a violation of Article 16 to be arbitrable matter. (Id. § 16.02.) We agree with the D.C. Circuit that any kind of reading of the third sentence of § 16.02 that would exempt from arbitration the exact types of disputes specifically allowed under the first sentence would be absurd.

[5] Verizon also argues that an email dated January 5, 2017, shows that the Union is merely challenging benefits eligibility. In that email, the Union states that "[i]n our view, [Verizon's] failure to apply the terms of the SADBP to individuals subject to the Medical Restrictions Plan violates their rights under Article 2, the 2012 MOU (including Section VII) as well as Article 16.011 of the CBA." (Pet.; Ex. 11.) While this argument is closer to the mark, we believe the fact that the Union made a specific claim of a violation of § 16.011 in its May 28, 2015 correspondence controls whether this type of claim is arbitrable.

concerning whether the Union's grievance is arbitrable, we believe there was at least some reasonable chance to prevail in this matter. Verizon set forth colorable arguments concerning the scope and exclusions of the arbitration clause, and we do not believe it lacked a complete justification to resist arbitration. Accordingly, we decline to award the Union costs and counsel fees associated with bringing this action.

## IV.   <u>CONCLUSION</u>

Although the arbitration clause in this case is narrow, the Union's grievance comes within the scope of it because the Union claims a violation of § 16.011 of the CBA, which is expressly authorized under the first sentence of § 16.02. The remaining language in § 16.02 does not exclude the Union's grievance, nor is there any other forceful evidence to indicate the parties intended this type of grievance from being excluded from arbitration. Accordingly, we grant the Union's Petition to Compel Verizon to Arbitrate and deny Verizon's Motion for Judgment on the Pleadings.

However, even though we reject Verizon's arguments concerning whether this grievance is arbitrable, we believe Verizon set forth worthy arguments as to why this type of grievance may not be the subject of arbitration. Accordingly, we deny the Union's request for costs and attorneys' fees associated with bringing this action.

An appropriate Order follows.